Hi. Good morning. My name is Robert Gahnweiner. I represent the appellant Dimitri Powell. I'd like to reserve two minutes for rebuttal. Dimitri Powell's sentence should be vacated and remanded because, first, Washington State second-degree robbery is not a crime of violence, second, because procedural error occurred when the court relied on disputed,  and third, when the court found that the factually disputed obstruction of justice enhancement applied without resolving the dispute or making the explicit findings required by Rule 32. Should we wait for Beckles to decide this case? I'm sorry? Should we wait for Beckles to decide this case? Well, I was anticipating that question. Because the Supreme Court's higher than we are, as you know, and they just had argument on that, and they seem to want to address this issue. Well, I did, of course, read the transcripts of Beckles' argument, and there are various ways of interpreting that. And one thing that could predominate the questions that are before this Court is if they simply decide that Johnson 2 is not retroactive to cases on collateral review. Well, except the government really didn't want to talk about it, and the Supreme Court went to a point of didn't they get, like, an amicus from a University of Chicago professor or something? Because they wanted to talk about it. That's all true, Your Honor. But I do think that at the argument, one of the ‑‑ did specifically raise the question why don't we ‑‑ if we decide this on retroactivity grounds, we don't need to reach these other issues, do we? So, obviously, I'm not the Delphic Oracle. I don't know what the Supreme Court is going to say. Well, it seems on Johnson, after they decided Johnson, it's upended a lot of things that are going on. And they since have granted cert. There's a case where I descend called the Maya, and then there's Beckles. And it seems to be that everyone wants to say that the Johnson rationale, it applies to the guidelines, applies to other sections that aren't included in Johnson. And the Supreme Court either wants to say it applies to the whole world or we meant what we said in Johnson, and it only applies to that particular section. And so, you know, I just ‑‑ it's teed up. I'm just wondering why do I want to guess what they're going to say when what they say might make ‑‑ might tell us the answer. Well, it certainly could. I mean, if there are ways they could decide the decision. I'm just pointing out that it's also possible that the decision will not resolve any of these issues. They might just think for reasons of judicial economy. Well, in order to predict the outcome, the question is that we have to face is do we want to go down the road on the assumption that they don't reach the issue. And given that it was argued, presumably they will have a decision unless they're on a 4‑4 tie and they want to wait for their colleague to be confirmed. So I'm not sure we ‑‑ I think we have your position, but it seems to me the better part of discretion is let's see what, if any, guidance we get. Well, I can't really argue with that. I wasn't expecting you to. Right. You have argued, so I hear you. You had a couple of other issues not related. Maybe I could address those issues. Right. And because I do think they're extremely important issues and ones that independently justify vacating the sentence. The first is that there were some allegations in the presentence report of uncharged conduct, conduct that never even led to a charge, much less a conviction, about these incidents of domestic violence. And they were pretty explosive allegations. The defense specifically disputed the accuracy of those incidents, both in a supplemental sentencing memorandum and at the hearing and Mr. Powell himself in his elocution directly denied that they occurred. Unfortunately, what happened was that the district court clearly focused on these incidents. I mean, the first thing that comes up when they're talking about his criminal history, this is at ER 23, the judge says, well, I'm focusing on paragraph 72, which is the first of the incidents of uncharged conduct. Well, now, his domestic violence was not considered in the criminal history computation, was it? No, it wasn't, and that's what the problem is, that it wasn't considered and it shouldn't have been considered because it wasn't a conviction. The problem was that the district court clearly believed that these things occurred. I mean, he specifically says when he's talking to Mr. Powell, he doesn't say, well, there are these allegations. He says, you threaten these, I'm not quoting exactly, but essentially he says, you threaten these women, and then he starts reading from the pre-sentence report. But, of course, the pre-sentence report is not evidence. You can't say that that establishes anything. But your client also, too, I mean, wasn't there an obstruction? Well, there was. Something, there was obstruction. And so then it starts coming out because he tried to get, what, women in his life to take credit for, to take the fall for him, and he was saying, well, I didn't obstruct anything, and then the evidence, then they said they started discussing that evidence, and it just sort of mushroomed. But I'm wondering, did the probation officer or the government, anyone say that the domestic violence arrest, cite that as justification for the upward departure from the guidelines? No, and that's not the contention. The contention is that the court did focus on these issues, these domestic violence issues, and rather than affording Mr. Powell a hearing in it, even though the defense specifically said, if the court's going to be talking about these things, we should have a hearing on them. And even though Mr. Powell ---- We hear a lot of things, but then if we don't base our decision on it, I mean, it's pretty frequent that courts hear a lot of things, and they say, well, but I'm not going to make my decision based on that, and let's ---- Well, and that's certainly true. And I'm not suggesting that every time there's some random comment we need to, you know, run up the flagpole and have a big hearing, but this is not that case. This is a case in which it is absolutely clear if you read the whole sentencing transcript. Okay, so assuming we accept your argument, I take your point that there's a lot of emphasis on this domestic violence. So what would the remedy you would ask us to give? The remedy would be to remand for a sentencing in which the defense would have the opportunity to ---- the government would have to show that these incidents did occur, and the defense would have an opportunity to defend against this. Wait, let me ---- can you just clarify one thing for me? When the judge ---- so the guideline range was, I think I wrote it down here, 77 to 96. Correct. Right? And he opposed the statutory maximum. Correct. Did he give an explanation, a precise explanation for why he went up? Well, he gave an explanation, but it's ---- frankly, it's a little difficult to understand exactly what the explanation was. I mean, he basically said, you know, I'm a father and et cetera, and then he said, you know, I've got to protect the public. Wasn't he referring to his total criminal record? He was referring to his total criminal record, but I think part of what Judge Layton understood his total criminal record to be were these on-charge defenses. I mean, I think that's the only fair inference. Oh, no, no, no, no. You guys, I wasn't relying on the domestic violence stuff. I was just relying on his criminal record, and he merits a 120-month sentence. Well, in that case, I would ---- we've also argued in our brief that it was ---- Well, let's talk about his criminal record. Didn't he have a manslaughter? Didn't he have a manslaughter too? Wait a minute. I'd like to hear your answer to Judge Pius. My answer is going to be that we don't know what Judge Layton would say, but we should ---- No, if it goes back and he says, no, I didn't rely on it, you were going to say ---- I was going to say we ---- then we would at least have clarification as to what he actually meant when he imposed this sentence, but my position would be that the defense is entitled to a hearing on these matters. I'm conceding for this question, you get the hearing, okay? And Powell says, I didn't do these things. I deny them. And Judge Layton says, okay, I didn't rely on them anyway. Then what? Well, then we would have to consider whether or not, in fact, it is reasonable to impose such an extreme sentence for ---- That would be on your substantively unreasonable argument. Right. Well, we'd be in a different position. Correct. Okay. So Judge Callahan ---- Judge Callahan had a question. I'm sorry. Yes? Of the things that were not disputed, why don't you tell me what his record was? I think I seem to recall a whole lot of convictions from the time he was a very young man involving robbery, manslaughter. Well, okay. The prosecutor, if you don't want to tell me, I'm sure that's ---- I can discuss his record. He had a second-degree manslaughter conviction. Second-degree manslaughter is negligent homicide. It's not even reckless. The state of mind is negligence. So he had that crime. He had some drug crimes. He had some other crimes. He had a significant criminal history, but was in a particular ---- The only other, the big violent crime was the second-degree robbery, which resulted in a drastic increase in his guideline level. And that's, of course, what, you know, one of our primary contentions is that it shouldn't have been counted as a crime of violence. Okay. And he ---- It wasn't an escalating record. Okay. I'm sorry if I took too much time. No, that's okay. No, no, no. We asked the questions. All right. All right. Go ahead. Okay. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Good morning. I'm Teal Miller for the United States. I think this Court should hold for the decision in Beckles, hold its decision in this case for the decision in Beckles, because there is a possibility Beckles will come out in a way that doesn't resolve the issue about the crime of violence in this case, but there's also a possibility that it will resolve that. I think it would make sense, depending potentially on how Beckles comes out, to take supplemental briefing, because I think that your sister circuits, which have decided that the enumerated offenses no longer state crimes of violence under Guideline 4B1.2 are wrong. I'll say briefly why I think they're wrong, but then I'll move on to the domestic violence allegation. Well, if at the time there wasn't an objection on robbery being a crime of violence, right? Correct. So if we did it right now, we'd have to review it for plain error, right? That's right. I think you would also have to review it for plain error later for two independent reasons. One, Mr. Powell was sentenced after Johnson was decided, and so this case is distinguishable for the unpublished decision in Tate that counsel cited in the 28J later, earlier this week. Powell or, excuse me, Johnson, too, was decided at the end of June 2015. Powell was sentenced at the end of July 2015. Second, Mr. Powell has conceded in his brief that the standard of review is plain error, and he is bound by that concession here. Okay. Okay. Just very briefly why I think that your sister circuits are wrong. One, I think that their interpretation, their conclusion that the enumerated clauses offenses in 4B1.2 depend on the residual clause of the Guideline is wrong because it's inconsistent with Stinson, which says that the Guideline, 4B1.2, is a binding interpretation of the phrase, crime of violence. It says an enumerated offense in an application note is an interpretation of the phrase, crime of violence. It's not an interpretation of the phrase, or it's not an interpretation of the residual clause. This Court's decision in Grand Moi bears that out. This Court would have to sit on bonk to reverse that. Two, it's inconsistent with the history of 4B2.1, which, excuse me, 2.1, that's right, which shows that 2.1 was originally based on 18 U.S.C. 16 and had a list of enumerated offenses. In 1989, it was amended, and it was based on ACCA's definition of crime of violence, but it kept the list of enumerated offenses, which shows that that list is not an understanding assertion of the Sentencing Commission's power to say what crime of violence means. Secondly, those sister circuits are, that theory started out analyzing 4B2.1 straight up. This is a case where the defendant was actually sentenced under 2K2.1, which says that a crime of violence meets the Guideline and Application Note 1. The commentary to 2K incorporates not just the Guideline, but the Application Note. So 2K2.1 is like 2L in that there's no definition in the Guideline. It's simply a reference to a list. Or in the case of 2L and in the case of 2K, it's a reference to a list plus the Application Note. Sorry, to the Guideline plus the Application Note. It's also the case that there are other Guideline provisions that refer to the B2, which suggests that the commission thinks it has freestanding force. Roberts. There's one question that I didn't, since you're talking about this. I mean, I really haven't, it seems to me the proper thing to do is to wait for Beckles. But the one question that I hadn't, that bothered me about this, even if you could have it enumerated, robbery and enumerated, enumerated in the commentary. Yes. Do you have to, does that end the whole analysis? No. Do you have to do a categorical? Do you still have to do the Taylor categorical and ask whether robbery, second-degree robbery under Washington is? Meets the generic offense. Meets the generic offense? Yes. Of robbery. Or the physical force element? Meets the generic definition of robbery or extortion, which is what this Court said in Becquerel-Lopez. That would come later. Yes. That would come later. Yes.  Yes. Okay. That's right. All right. I'll address the domestic violence question. Yes. Thank you. I think it is, it is true that the Court referred to the domestic violence allegations twice. But it is an unfair characterization in the sentencing transcript to say that the Court focused on that. Page 59 of our brief cites nine different pages in the transcript where the Court talked about Powell's criminal history without mentioning those allegations. The best example is page 29 of the ER. The Court says, I can do a staccato, I can cross a river with pebbles of his crimes almost day by day after the 2013 arrest and after he turned, supposedly turned his life around. Then he says, he saw a guy's head blow open. That's about the second-degree manslaughter conviction. It's undisputed. I think Mr. Powell alleges that he — there's no question that he shot someone in the head. He alleges it was self-defense and it was charged as second-degree manslaughter because I think the State believed it would be charged hard to disprove the self-defense. But he — it's — it is undisputed that he shot someone in the head. And the Court said, he saw a guy's head blow open. That was a poignant memory in his psyche. It didn't change him then. He's saying, if that didn't change him, what might have? And then the Court says, I think — sorry, counsel says, I think it changed him dramatically. The Court says, I know that, but almost from day one after he got out of jail for the manslaughter conviction, he was getting into trouble again. And then why should we think his future is going to be changed in any way? I think it's — it's — it's — the correct characterization of this record is that the Court used the domestic violence allegations when he claimed, I'm just a drug addict, but didn't focus on them at sentencing. You know, you're supposed to give — the judge is supposed to give some explanation for departing upward. Yes. Did he depart upward under the guidelines or did he depart upward — or did he vary under the 25 — the 53 — what is it, 53? 3553. 3553 factors. 3553. What did he do and what was the explanation? The statement of reasons, which is in the document called Sentencing Reasons. Those are kind of weird. That's kind of an odd statement of reasons. Well, he checked several boxes under 3553A, and then he said he thought that the defendant was a persistent — a complex, persistent, and manipulative offender. At pages 50 through 51 — In this little typed-out thing, he says? Yeah. I think it's — I think it's page 3 of the statement of reasons. Did he say that on the record? Well — I looked in the — I looked — Yes. He's supposed to give some explanation. He did, Your Honor. At pages 50 through 51 — And I couldn't quite figure it out. At pages 50 through 51, he gives his — his reason in imposing the sentence. And the first thing he says is, you know, he acknowledges that the — that probation said you should sentence him to the statutory maximum because he's a dangerous person. So he — he says, I'm influenced by the pre-sentence report. And that's the reason given in the pre-sentence report. And then he goes on to say, I just believe that this defendant is too dangerous to risk letting him out into the community. And that is a 3553a factor, specific deterrence of a criminal that is an entirely legitimate exercise of the district — of the district court's discretion at sentencing, and has absolutely nothing to do with the domestic violence allegations. One final point about those allegations. Well, he's particularly dangerous because if I let him out, he's going to go back and smack around his partner. I don't think that's a fair reading of the record, because the United States in probation, when they were advocating for the maximum term, both noted that, you know, since he got — he'd spent most of his adult life in prison, and he'd had four felony convictions since he got out of jail after the second-degree manslaughter conviction, and was persistently violating terms of release. There's also a point to be made that the domestic violence allegation in the Court's discretion was harmless error, because Mr. Powell has a conviction for domestic violence on his record. It's at — I think it's at page 3 of the pre-sentence report. He was a juvenile at the time, but he was convicted for threatening a girlfriend. Kagan. Yeah. And that means that to the extent the district court was influenced by the idea that he abused women, there was a conviction that showed that, that the Court properly considered. If the Court has no further questions, we ask that the sentence be affirmed. Thank you. You had about a minute. Just very briefly, first, if you look at ER-43, Mr. Powell is trying to defend himself in saying, I have a drug problem, but I'm not a person, I have a good heart, then the Court goes, you beat up three women or you threatened them. That's a declarative statement. He says, that's what you did. And then he, to make the point clearer, he reads all of the allegations about Sharonda McKee, Geneva Wright, Tiara Young. He just reads all these explosive allegations. So to say that the judge is not focusing on those as the reason Mr. Powell is so dangerous, or the reason Mr. Powell has an extensive criminal history, really doesn't comport with what the record itself shows. And also, I would also refer to ER-23. When Mr. Q, the defense attorney, says he doesn't have such a horrendous criminal history, the judge merely interrupts and says, I'm focusing on paragraph 72. And then he reads what's in paragraph 72. He goes on for a paragraph about that. So that's our point. Thank you. Thank you. Thank you, counsel. Matter submitted.
judges: Fisher, Paez, Callahan